UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TEVA PHARMACEUTICALS | * | |
| INTERNATIONAL GMBH and | * | |
| TEVA PHARMACEUTICALS | * | |
| USA, INC., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Civil Action No. 21-cv-10954-ADB |
| v. | * | |
| | * | |
| ELI LILLY AND COMPANY, | * | |
| | * | |
| Defendant. | * | |
| | * | |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiffs Teva Pharmaceuticals International GmbH and Teva Pharmaceuticals USA,

Inc. (collectively, "Teva") allege that Eli Lilly and Company ("Lilly") has induced infringement

of Teva's patents, U.S. Patent Nos. 11,028,160 ("the '160 Patent') and 11,028,161 ("the '161

Patent") (together, "the Patents-in-Suit"), which claim methods for treating patients with

migraine headaches.  [ECF No. 1 ("Compl.")].

Teva filed its complaint on June 8, 2021, seeking a declaratory judgment regarding the

infringement of both Patents-in-Suit, as well as seeking monetary and equitable relief for the

infringement.  [Compl.]   Lilly moved to dismiss the complaint on August 27, 2021, [ECF No.

15], which Teva opposed on October 18, 2021, [ECF No. 21].  Lilly filed its reply on November

2, 2021, [ECF No. 29], and Teva filed a sur-reply on November 9, 2021, [ECF No. 32].

Lilly moves to dismiss Teva's complaint pursuant to Federal Rule of Civil Procedure

12(b)(6) for failing to state a claim upon which relief may be granted because Teva has not

plausibly pled either induced infringement by Lilly or a prerequisite underlying act of direct

infringement.  [ECF No. 15].  Teva, in turn, contends that Lilly's motion "upend[s]" the Federal Circuit's notice pleading standard and that "Lilly has conjured a series of arguments improperly rooted in claim construction disputes—and its future noninfringement contentions based thereon—to argue that Teva's pleading is somehow technically deficient."  [ECF No. 21 at 5].

For the reasons set forth below, the motion to dismiss is <u>DENIED</u>.

## I.      BACKGROUND

The following facts are taken primarily from the complaint, [Compl.], the factual allegations of which are assumed to be true when considering a motion to dismiss, <u>Ruivo v. Wells Fargo Bank, N.A.</u>, 766 F.3d 87, 90 (1st Cir. 2014).  As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice."  <u>Giragosian v. Ryan</u>, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 20 (1st Cir. 2003)).

### A.      The Patents-in-Suit

In September 2018, Teva brought to market a migraine prevention treatment under the brand name Ajovy.  [Compl. ¶ 5].  During the process of developing this product, Teva also discovered that antibody drugs like Ajovy, which bind to calcitonin gene-related peptide ("CGRP"), can be used to help difficult to treat "refractory" migraines.  [<u>Id.</u> ¶ 7].  The Patents-in-Suit, both titled "Treating Refractory Migraine," protect methods for administrating the drug for the treatment or prevention of "refractory" migraines, including to patients who have failed on at least two prior preventative treatments or classes of preventative treatments for efficacy,

tolerability, or safety reasons.  [Id. ¶¶ 7–8, 65–70; see also ECF Nos. 1-47, 1-48].  The Patents-in-Suit were issued on June 8, 2021.  [Id. ¶ 28].

**B.      Infringement Allegations**

The complaint alleges that Lilly infringed on the Patents-in-Suit by intentionally inducing, and causing, doctors to prescribe Lilly's own anti-CGRP preventative migraine product, Emgality, according to the claimed methods.  [Compl. ¶¶ 9–12, 96–118].

Teva argues that Lilly, despite being aware of the Patents-in-Suit, see [Compl. ¶¶ 26–51], directed substantial marketing and promotional efforts at healthcare providers to encourage the use of Emgality for patients with refractory episodic or chronic migraine who had previously been treated with other preventative migraine drugs.  [Id.].  This included efforts to "raise awareness of refractory migraine treatment" among healthcare providers and by "invest[ing] heavily in developing an online presence directed to healthcare providers . . . to promote migraine treatments and CGRP's role in refractory migraine."  [Id. ¶¶ 21–22].[1]

Further, as alleged in the complaint, Lilly has maintained websites intended to steer healthcare providers to prescribe Emgality according to the methods claimed in the Patents-in-Suit through the use of hypothetical patient profiles, treatment guidelines, trial results, and insurance submission templates, all of which facilitate and encourage the prescribing of Emgality to patients who have failed two or more prior preventive migraine treatments or classes of treatment.  [Compl. ¶¶ 102–16].  The complaint details specific examples of Lilly promoting the success of Emgality for the treatment of refractory migraine patients who had failed previous treatment methods, including statements like "[d]iscover what Emgality® can do for patients

---

[1] Instructions on the preventative treatment of both episodic and chronic migraine are included on the FDA-approved label, or package insert, for Emgality.  [Compl. ¶ 83].

with episodic migraine[,]" and that 53% of episodic migraine patients who "failed ≥2 preventives" "achieved ≥ 50% reduction in monthly [migraine headache days] . . . over months 1 to 6[.]"  [Id. ¶ 97; see also ¶¶ 98–99].

As a result of Lilly's inducement, Teva asserts that doctors in the United States have, in fact, directly infringed upon the Patents-in-Suit by selecting migraine patients who previously failed at least two prior preventative treatments or classes of treatments, and prescribing those patients Emgality as a preventive treatment for their "refractory" migraines, as claimed by the Patents-in-Suit.  [Compl. ¶¶ 11, 92–95, 124, 133].  Teva adds that certain insurance company policies specifically require that migraine patients first have failed at least two prior preventive migraine treatments and/or at least two classes of prior preventive migraine treatments before providing reimbursement for Emgality, and that when doctors prescribe Emgality in accordance with these policies, they are specifically practicing the claimed methods and are thereby directly infringing upon the Patents-in-Suit.  [Id. ¶¶ 94–95; see e.g., ECF Nos. 1-4, 1-30, 1-31, 1-32 (examples of policies)].

## II.      LEGAL ANALYSIS

### A.      Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in the plaintiff's favor.  See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

The Federal Circuit has made clear that a plaintiff "need not 'prove its case at the pleading stage.'" Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352 (Fed. Cir. 2021) (quoting Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1350 (Fed. Cir. 2018) then quoting In re Bill of Lading Transmission & Processing Sys. Pat. Litig., 681 F.3d 1323, 1339 (Fed. Cir. 2012)). Instead, for Teva's claims to survive the motion to dismiss, its "factual allegations need only be enough to place [Lilly] on notice[]" so Lilly "has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc., No. 19-cv-12533, 2020 WL 2079422, at *3 (D. Mass. Apr. 30, 2020) (quoting

<u>Simplivity Corp. v. Springpath, Inc.</u>, No. 15-cv-13345, 2016 WL 5388951, at *3 (D. Mass. July 15, 2016) (internal citation and quotation marks omitted).

###### B.     Induced Infringement

Under 35 U.S.C. § 271(b), a person or entity that actively induces infringement of a patent is liable as an infringer.  To state a claim under an inducement theory, the plaintiff must establish: (1) evidence of direct infringement, and (2) that "the defendant, with knowledge of the patent, actively and knowingly aided and abetted such direct infringement."  <u>Nalco Co. v. Turner Designs, Inc.</u>, 73 F. Supp. 3d 1096, 1102 (N.D. Cal. 2014) (quoting <u>Meyer Intell. Props. Ltd. v. Bodum, Inc.</u>, 690 F.3d 1354, 1366 (Fed. Cir. 2012)) (additional citation omitted).  In other words, Teva must allege that Lilly (1) knew of the patent, (2) knowingly induced infringing acts, and (3) acted with specific intent.  <u>Zond, Inc. v. Fujitsu Semiconductor Ltd.</u>, 990 F. Supp. 2d 50, 56 (D. Mass. 2014) (citing <u>Vita-Mix Corp. v. Basic Holding, Inc.</u>, 581 F.3d 1317, 1328 (Fed. Cir. 2009).

## III.     DISCUSSION

Lilly does not contest its knowledge of the Patents-in-Suit or its knowledge that doctors may have prescribed Emgality in accordance with the claimed methods.  The inducement claims, instead, turn on the parties' disputes over (1) whether there has been an underlying act of direct infringement and (2) whether Lilly had the specific intent to induce that infringement.

###### A.     Direct Infringement

To state a claim of direct infringement under 35 U.S.C. § 271(a), Teva must plausibly allege that someone, "without authority ma[de], use[d], offer[ed] to sell," or sold the Patents-in-Suit.  "A plaintiff is not required to plead infringement on an element-by-element basis[,]" <u>Bot M8</u>, 4 F.4th at 1352, but where the asserted patent claims are method claims, "direct

infringement . . . requires a showing that every step of the claimed method has been practiced." Blue Engine Biologics v. Arteriocyte Med. Sys., Inc., No. 21-cv-11098, 2022 WL 407409, at *2 (D. Mass. Feb. 10, 2022) (quoting Meyer Intell., 690 F.3d at 1366).

Lilly's primary argument is that Teva's direct infringement claims fail because Teva has not plausibly pled direct infringement of certain claim limitations in each of the Patents-in-Suit.

First, Lilly contends that some of the insurance policies cited by Teva in its complaint do not require any prior treatments for reimbursement for Emgality and, as such, cannot demonstrate infringement on the limitations required by the Patents-in-Suit, which demand: "selecting a subject who has been treated with at least two or more" either "classes of preventative migraine treatments" ('160 Patent) or "preventative migraine treatments" ('161 Patent), wherein at least one is from an enumerated list. [ECF No. 16 at 6–7, 15–16]. Second, Lilly argues that the "subject having refractory migraine" limitation has not been infringed because Teva has not alleged any specific infringement of the parts of the limitation that define a "refractory migraine," in part, as based on an inadequate response entailing "no clinically meaningful improvement . . . after at least three months of therapy at a stable dose[.]" [Id. at 12–14]. According to Lilly, because Teva's infringement allegations do not specify the amount of time a subject received the prior therapy at a stable dose, or any other aspect of the "inadequate response" definition, and because none of the cited insurance policies require three months of prior treatment, Teva has failed to plausibly allege that the use of Emgality as prescribed by doctors meets the claimed "subject having refractory migraine" limitation. [Id.]. Teva responds that Lilly has raised "classic" claim construction arguments that are inappropriate at the pleading stage and insufficient to dispute infringement even if the Court were to consider them. [ECF No. 21 at 10–13]. The Court agrees with Teva.

"[D]istrict courts have been cautioned against resolving claim construction disputes at th[e] [motion to dismiss] stage." Bos. Fog, LLC v. Ryobi Techs. Inc., No. 19-cv-2310, 2020 WL 1532372, at *2 (D. Del. Mar. 31, 2020).  Lilly's arguments necessarily rely on their proposed claim constructions, which are not suitable for resolution on a motion to dismiss.  See Hand Held Prods., Inc. v. Amazon.com, Inc., No. 12-cv-0768, 2013 WL 507149, at *7 (D. Del. Feb. 6, 2013) ("Defendants attempt to surreptitiously have the court conduct claim construction as part of its analysis under Rule 12(b)(6), contrary to the purpose of the rule. The analysis required is not to resolve disputed facts, nor decide the merits; rather, the examination is limited to testing the sufficiency of the complaint.").

Further, Teva disputes Lilly's construction of the claim elements.  [ECF No. 32 at 4]. Specifically, Teva disagrees that the preamble phrase "subject having a refractory migraine" should be interpreted as an affirmative limitation and additionally disputes whether the language used in the patents' specifications definitively affixes the meaning of the phrases in each claim. The Court must, at this stage, "afford the claims their broadest possible construction" and, accordingly cannot prematurely adopt Lilly's proposed claim constructions if doing so would result in the premature dismissal of an infringement claim.  Bill of Lading, 681 F.3d at 1343, n.13.

Moreover, while the Court need not proceed further, Teva's complaint has put forth factual allegations that plausibly allege infringement even under Lilly's narrow construction of the claims.  Contrary to Lilly's assertions, Teva has provided insurance policies that describe circumstances in which Emgality prescriptions may be reimbursed according to the methods claimed by the Patents-in-Suit, including allowing for patients who have received prior treatment.  [ECF No. 21 at 11, 14–17].  In sum, Teva has alleged that "almost three fourths of

refractory migraine patients discontinue prior preventative treatment within *six* months, that insurance policies describe methods of treating refractory migraine patients who were previously treated for *at least* two months, and that Lilly's marketing materials encourage prescription to patients who were previously treated for two months *or longer.*"  [ECF No. 32 at 8 (emphasis in original); see also ECF No. 21 at 11, 14–17].  Read in the light most favorable to Teva, it is plausible that doctors have prescribed Emgality to some refractory migraine patients who were previously treated for at least three months as specified in the claimed methods.

While Lilly's claim construction disputes may one day raise the question of whether every step of the claimed methods was practiced, this inquiry is better reserved until discovery has been completed.  Taking all inferences in its favor, Teva has more than met the plausibility standard to state a claim.  In fact, as evidenced by Lilly's detailed analysis of the claimed elements, Teva has certainly "give[n] [Lilly] fair notice of what the . . . claim is and the ground upon which it rests."  Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (first quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007) then quoting Twombly, 550 U.S. at 555)); see also Simplivity, 2016 WL 5388951, at *5.

### B.    Specific Intent

Lilly next argues that Teva has not plausibly alleged that Lilly had the specific intent to induce any infringement.

Intent to induce acts of infringement may be proven by circumstantial evidence.  DSU Med. Corp. v. JMS Co., 471 F.3d 1293, 1306 (Fed. Cir. 2006).  "Courts have . . . determined that advertising one's product for a specific use constitutes induced infringement[.]"  Bio-Rad Lab'ys, Inc., 2020 WL 2079422, at *7; see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936 (2005)) ("Evidence of active steps taken to encourage direct

infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe . . . .").

In the complaint, Teva alleges that Lilly advertised and instructed that Emgality be used to perform the claimed methods: treating migraine patients who have previously been unsuccessfully treated with preventative drugs.  Despite Lilly's contentions, the complaint does not attribute any infringing use to insurance company policies alone, but instead provides specific allegations, "supported by numerous exhibits, that Lilly has issued statements and marketing materials with the specific intent to encourage doctors to prescribe EMGALITY to refractory migraine patients who have failed at least two prior preventative treatments, as claimed by the Patents-in-Suit."  [ECF No. 21 at 18; see Compl. ¶¶ 96–118].  Among the publicly available materials described in the complaint are statements from Lilly's own website, [see Compl. ¶ 97; ECF No. 1-33 ("[d]iscover what Emgality® can do for patients with episodic migraine" and that 53% of episodic migraine patients who "failed ≥2 preventives" "achieved ≥ 50% reduction in monthly [migraine headache days]" "over months 1 to 6.")]; press releases, [see Compl. ¶ 99; ECF Nos. 1-35, 1-36, 1-37, 1-38 ("positive results for Emgality . . . from [a clinical trial] in patients who failed previous migraine treatments.")]; and treatment guidelines, [see Compl. ¶ 104; ECF No. 1-45 (including the listed criteria for episodic migraine and chronic migraine as "[i]nability to tolerate at least 2 prior preventive treatments due to side effects OR inadequate response to a 6-week trial of at least 2 prior preventive treatments")], among others, see [Compl. ¶¶ 96–118].  Where the Federal Circuit has found this type of circumstantial marketing evidence sufficient to prove induced infringement, it is surely sufficient to survive a motion to dismiss at this early stage.  See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 843 F.3d 1315, 1335 (Fed. Cir. 2016) (collecting cases).  The fact that some of these

promotional materials existed before the Patents-in-Suit is non-dispositive, as Lilly has not disputed that it continued to publish and maintain all these materials even after the patents issued.  [Compl. ¶¶ 47–51, 118; see also ECF No. 21 at 19].

Moreover, to the extent Lilly argues that Teva failed to plead specific intent because Emgality's label also promotes "substantial noninfringing use," see [ECF No. 29 at 7], the Federal Circuit has found that "substantial noninfringing use" is not a limitation on inducement. Sanofi v. Watson Lab'ys Inc., 875 F.3d 636, 646 (Fed. Cir. 2017); see also Vanda Pharms. Inc. v. W.-Ward Pharms. Int'l Ltd., 887 F.3d 1117, 1132–33 (Fed. Cir. 2018); Eli Lilly & Co. v. Teva Parenteral Meds., Inc., 845 F.3d 1357, 1368 (Fed. Cir. 2017).

 Lilly's reliance on Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1365 (Fed. Cir. 2003) is misplaced.  In Warner-Lambert, the Federal Circuit declined to "infer" intent to induce infringement of an off-label use that was in contravention of FDA regulations and constituted only a small fraction of total sales of the product.  Id.  In contrast, "liability for active inducement may be found where evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement."  AstraZeneca LP v. Apotex, Inc., 633 F.3d 1042, 1059 (Fed. Cir. 2010) (internal quotation marks and citations omitted); see also Impax Lab'ys, Inc. v. Actavis Lab'ys FL, Inc., No. 15-cv-6934, 2018 WL 1863826, at *13 (D.N.J. Apr. 18, 2018) (denying defendant's motion for summary judgment on induced infringement claim, even where there was some evidence of substantial noninfringing use, because a reasonable factfinder could find specific intent based on instructions on the proposed label referencing the claimed method).

Teva has provided sufficient circumstantial evidence to plausibly allege that Lilly had the specific intent to induce infringement of the method claims.  Lilly repeats its claim limitation

arguments to assert that Teva has failed to allege specific intent to infringe all aspects of the methods, but, for the reasons stated above, the Court declines to address claim construction without the benefit of a fully developed record, and particularly without expert discovery.

Applying the appropriate liberal notice pleading standard, Teva's ample factual allegations of direct and induced infringement have put Lilly on notice of the infringement alleged and have more than adequately "nudg[ed] [its] claims into the range of plausibility." Bio-Rad, 2020 WL 2079422, at *10.

## IV.     CONCLUSION

Accordingly, for the reasons set forth above, Lilly's motion to dismiss, [ECF No. 15], is DENIED.

**SO ORDERED.**

March 15, 2022                                         /s/ Allison D. Burroughs
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE